AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| 1456 Rambler Place Cincinnati, Ohio | ) ) ) |

Case No. **1:20-MJ-00485**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Southern_____ District of _____Ohio_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) and 846 | Conspiracy to Possess with Intent to Distribute Heroin/Fentanyl |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tyler D. Field, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence. **via electronic means.**

Date: **Jul 7, 2020**

_____
*Judge's signature*

City and state: Cincinnati, Ohio

Hon. Stephanie K. Bowman, U.S. Magistrate Judge
*Printed name and title*

Attachment A

# 1456 Rambler Place, Cincinnati, Ohio 45231

1456 Rambler Place, Cincinnati, Ohio is described as a single-family, two-story residence. It has white siding and the front entry door faces south-east. The words "fourteen fifty six" appear above the garage.

Any and all vehicles located within outbuildings, garages, and/or the curtilage.



# <u>ATTACHMENT B</u>

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k.  Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l.  Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds;

m.  Controlled substances, including, but not limited to heroin/fentanyl;

n.  Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to heroin/fentanyl, and any other supplies related to the manufacture and distribution of said controlled substances;

o.  United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p.  Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence.

# <u>AFFIDAVIT IN SUPPORT OF SEARCH WARRANT</u>

I, Tyler D. Field, Special Agent with the Drug Enforcement Administration, being first duly sworn, hereby state:

1.      This affidavit is submitted in support of an application for search warrants for evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute heroin/fentanyl, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

2.      For all the reasons outlined in this affidavit, I have probable cause to believe that evidence related to these crimes will be located within the following **Subject Locations**, which are more fully described in **Attachment A** (attached hereto and incorporated herein by reference):

    a.   1456 Rambler Place, Cincinnati, Ohio

    b.   1333 Carolina Avenue, Cincinnati, Ohio

    c.   5443 Newfield Avenue, Cincinnati, Ohio

3.      This affidavit is submitted in support of an application for warrants to search the above listed **Subject Locations** more fully described in **Attachment A** for evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), as more particularly described in **Attachment B** (incorporated herein by reference). This affidavit is for the limited purposes of demonstrating probable cause. Therefore, I have not set forth each and every fact I have learned during this investigation, but only those facts and circumstances necessary to establish probable cause. The facts reported in this affidavit are based on my own knowledge, the knowledge of other law enforcement investigators involved in the investigation and the use of Confidential Sources/Sources of Information.

## TRAINING AND EXPERIENCE

4.      I am a Special Agent (SA) of the Drug Enforcement Administration (DEA) and have been so employed since March 2016. I also serve as a U.S. Army Military Police Major in the Indiana Army National Guard and have done so for over eighteen years. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I have graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During those courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities include conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States Code. As a DEA agent, I have participated in approximately twenty criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21, of the United States Code).

5.      I am currently assigned to the Cincinnati Resident Office of the DEA. I received specialized training from the DEA, including the 18-week Basic Agent Training course. That training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

## SUMMARY OF INVESTIGATION

6.      On February 7, 2018, the Cincinnati Police Department and the DEA Cincinnati Resident Office executed search warrants at 1333 Carolina Avenue, Cincinnati, Ohio, 1365 Spring Park Walk, Cincinnati, Ohio, and 515 Lowell Avenue, Cincinnati, Ohio. The address of 1333 Carolina Avenue was determined to be Ernest JACKSON's mother's residence. During the search of 1333 Carolina Avenue, investigators seized $37,765 in drug proceeds, a digital scale, and pound quantities of marijuana, all of which belonged to JACKSON. The address of 1365 Spring Park Walk was determined to be the primary residence of JACKSON and his paramour Zaffiah Robinson (now known as Zaffiah Jackson). During the search of 1365 Spring Park Walk, investigators seized $152,702 in drug proceeds, numerous cell phones, and two firearms, one of which was stolen, all of which belonged to JACKSON. The address of 515 Lowell Avenue was determined to be JACKSON's stash location. During the search of 515 Lowell Avenue, investigators seized more than two kilograms of heroin/fentanyl, two firearms, and drug preparation and packaging materials to include a kilogram press, blenders, scales, plastic bags, gloves, and masks, all of which belonged to JACKSON.

7.      On February 21, 2018, Ernest JACKSON was indicted in the Southern District of Ohio for conspiracy[1] to possess with intent to distribute more than 40 grams of fentanyl, possession with intent to distribute more than 40 grams of fentanyl, and being a felon in possession of a firearm. JACKSON has since pled guilty and is awaiting sentencing. In July 2018, JACKSON agreed to cooperate with law enforcement. Since that date, I have been in regular contact with JACKSON both in person and over the telephone. I am familiar with JACKSON's voice in person and over the phone.

---

1 The indictment indicated the conspiracy began on or about October 2017 and ended on or about February 7, 2018.

**Affidavit of Special Agent Tyler Field**                                                **Page 3**

8.      Recently, in May 2020, investigators from the Norwood Police Department interviewed a cooperating source (CS#1[2]). CS#1 stated that telephone number 513-290-1555 was used by a person to distribute heroin/fentanyl. CS#1 stated the person who answers the phone is not the person who typically conducts the transaction. Instead, the person who answers the phone typically directs CS#1 to meet with other members of the drug trafficking organization (DTO) at locations on Dale Road near Newfield Avenue, Andina Avenue, Oberland Avenue, Garden Lane and near the dead end of Joseph Street. CS#1 stated he/she has met with the person who answers the phone in the past. Investigators presented an Ohio Bureau of Motor Vehicles photograph of JACKSON to CS#1 and CS#1 confirmed that JACKSON is the person who always answers the phone to coordinate heroin/fentanyl transactions.

9.      On June 3, 2020, the Honorable Karen L. Litkovitz, United States Magistrate Judge in the Southern District of Ohio, signed a warrant authorizing the search of the cellular telephone assigned call number 513-290-1555.

10.     On June 4, 2020, at approximately 2:36 p.m., investigators began receiving location information concerning telephone number 513-290-1555. At approximately 5:10 p.m., telephone number 513-290-1555 was located in the area of 1333 Carolina Avenue. At approximately 5:18 p.m. investigators observed a silver 2020 Chevrolet Malibu bearing Ohio license plate HZK8773 parked in front of 1333 Carolina Avenue. According to the Ohio Bureau of Motor Vehicles, Ohio license plate HZK8773 is registered to Hertz Rental Cars. According to Hertz Rental Cars, the Malibu was rented to JACKSON's sister Tiffany Jackson (T. Jackson). Based on my training and experience, I am aware that drug traffickers often used rental vehicles rented to other individuals

---

2 CS#1 has a criminal history that includes disorderly conduct and domestic violence and is cooperating in consideration for a pending drug charge. CS#1 has provided information that investigators have been able to independently corroborate and believe CS#1 to be reliable.

**Affidavit of Special Agent Tyler Field**                                                    **Page 4**

in order to avoid detection by law enforcement. Investigators observed JACKSON leave the residence located at 1333 Carolina Avenue on foot and enter the driver's seat of the Malibu. JACKSON was the only occupant of that vehicle. JACKSON then departed the area and was followed by surveillance. At approximately 5:28 p.m. telephone number 513-290-1555 was located near the Shell gas station located at 1900 E. Seymour, Cincinnati, Ohio. Investigators observed that the Malibu was also located in the same area. Consequently, I believe that JACKSON departed 1333 Carolina Avenue with telephone number 513-290-1555 in a vehicle rented by T. Jackson. I further believe that the observations of JACKSON departing with telephone number 513-290-1555 corroborate CS#1's statements that JACKSON is the person who always answers telephone number 513-290-1555.

11.      On June 9, 2020, between approximately 12:56 p.m. and 2:51 p.m., telephone number 513-290-1555 was located in the area of 1333 Carolina Avenue. At approximately 1:53 p.m., investigators established surveillance in the area of 1333 Carolina Avenue and observed a black 2020 Chevrolet Silverado bearing Indiana license plate FL988ABL parked directly in front of the residence. According to the Ohio Bureau of Motor Vehicles, Indiana license plate FL988ABL is registered to Hertz Rental Cars. According to Hertz Rental Cars, the Silverado was rented to T. Jackson. Based on my training and experience, I am aware that drug traffickers often use rental vehicles rented to other individuals in order to avoid detection by law enforcement. At approximately 2:02 p.m., investigators observed JACKSON walk out of 1333 Carolina Avenue, walk near the rental vehicle, and then go back into the residence.

12.      At approximately 2:10 p.m., investigators directed CS#1 to make a recorded and monitored telephone call to JACKSON on telephone number 513-290-1555 in order to purchase ½ gram of heroin/fentanyl. During the call, JACKSON directed CS#1 to meet on Portman Avenue. I later

**Affidavit of Special Agent Tyler Field**                                              **Page 5**

listened to the telephone call and determined that the voice on the call was consistent with JACKSON's voice. Consequently I believe that JACKSON was the person who spoke with CS#1 regarding the heroin/fentanyl transaction. Investigators searched CS#1 for contraband and unauthorized funds with negative results. Investigators provided CS#1 with a covert audio/video recording device which allowed investigators to remotely monitor the transaction and produce a video/audio recording of the transaction and forty dollars ($40) in official funds. Investigators drove CS#1 to the area of Portman Avenue. At approximately 2:31 p.m. investigators observed CS#1 conduct a hand-to-hand transaction with the driver of a gray Nissan Altima with Ohio license plate HTP6620. According to the Ohio Bureau of Motor Vehicles, Ohio license plate HTP6620 are registered to Mike Albert Leasing. According to Mike Albert Leasing, the Altima was rented by Laronda Reid. According to the Ohio Bureau of Motor Vehicles, the address on Reid's license is 5443 Newfield Avenue, Cincinnati, Ohio. This residence is near the location where the controlled purchase took place. Based on my training and experience, I am aware that drug traffickers often use rental vehicles rented to other individuals in order to avoid detection by law enforcement. Investigators subsequently met with CS#1 and recovered approximately .54 grams total package weight of suspected heroin/fentanyl. The purchased substance will be submitted to the Hamilton County Coroner's Lab for analysis.

13.     During the controlled purchase, investigators maintained surveillance on the Silverado as well as the area at 1333 Carolina Avenue. At approximately 2:45 p.m., investigators observed JACKSON outside of 1333 Carolina Avenue speaking to another male. As previously noted, at approximately 2:51 p.m., the telephone number was located in the area of 1333 Carolina Avenue. Consequently, I believe that JACKSON possessed telephone number 513-290-1555 when CS#1 placed the telephone call to request to purchase controlled substances. I further believe that

JACKSON continued to possess telephone number 513-290-1555 at 1333 Carolina Avenue during the controlled purchase, which further corroborates the statement made by CS#1 that JACKSON is the person who answers the telephone to take the requests for controlled substances and that another person typically distributes the requested controlled substances.

14.     On June 11, 2020, investigators met with a cooperating source (CS#2[3]). CS#2 stated he/she has been purchasing heroin/fentanyl using telephone number 513-290-1555 for a couple of months. CS#2 stated the person who answers the phone is not typically who meets with CS#2 to conduct the transaction. Investigators presented an Ohio Bureau of Motor Vehicles photograph of JACKSON to CS#2 and CS#2 confirmed that JACKSON was the person who answers the phone to facilitate the narcotics transactions. CS#2 also confirmed he/she met with JACKSON earlier in June 2020, near the intersection of Joseph Avenue and Oberlin Avenue, in order to purchase heroin/fentanyl. The intersection of Joseph Avenue and Oberlin Avenue is located near 1333 Carolina Avenue. CS#2 stated that after calling JACKSON on telephone number 513-290-1555 on previous occasions he/she has also been directed to meet with DTO members to purchase heroin/fentanyl on Newfield Avenue, Andina Avenue, Oberlin Avenue, Garden Lane and near the dead end of Joseph Street.

15.     On Monday June 15, 2020, at approximately 1:30 p.m., investigators directed CS#2 to make a recorded and monitored telephone call to JACKSON on telephone number 513-290-1555 in order to purchase ½ gram of heroin/fentanyl. During the call, JACKSON directed CS#2 to meet on Carrahen Avenue near Newfield Avenue. I later listened to the telephone call and determined that the voice on the call was consistent with what I know as JACKSON's voice. Consequently I

---

3 CS#2 is cooperating for consideration on a potential drug possession offense that has not yet been charged. CS#2's criminal history includes misdemeanor traffic violations. CS#2 has provided information the investigators have been able to independently corroborate and consider CS#2 to be reliable.

**Affidavit of Special Agent Tyler Field**                                                              **Page 7**

believe that JACKSON was the person who spoke with CS#2 regarding the heroin/fentanyl transaction. Investigators searched CS#2 for contraband and unauthorized funds with negative results. Investigators provided CS#2 with a covert audio/video recording device which allowed investigators to remotely monitor the transaction and produce a video/audio recording of the transaction and forty dollars ($40) in official funds. An undercover officer (the UC) drove CS#2 to the area of Newfield Avenue. Upon their arrival, CS#2 made a recorded and monitored telephone call to telephone number 513-290-1555. JACKSON told CS#2 to stay near the intersection and wait. At 2:04 p.m., the UC observed and recorded an unidentified male walking out of 5443 Newfield Avenue and enter a gray Acura. The unidentified male drove the Acura approximately 100 feet next to the driver side of the UC's vehicle. The UC gave the unidentified male forty dollars ($40.00) in official funds and the unidentified male gave the UC approximately .56 grams total package weight of suspected heroin/fentanyl. The purchased substance will be submitted to the Hamilton County Coroner's Lab for analysis.

16.     On June 18, 2020 at approximately 2:44 p.m., telephone number 513-290-1555 was located in the area of 5443 Newfield Avenue. Investigators subsequently observed a 2019 White Volkswagen Atlas bearing California License Plate 8JRC425 parked in the area of 5443 Newfield Avenue. According to the California Department of Motor Vehicles, California license plate 8JRC425 is registered to Hertz Rental Car. According to Hertz Rental Car, the Atlas was rented by T. Jackson.

17.     At approximately 2:46 p.m., investigators directed CS#1 to make a recorded and monitored telephone call to JACKSON on telephone number 513-290-1555 in order to purchase ½ gram of heroin/fentanyl. During the call, JACKSON directed CS#1 to travel to Dale Road and to call back when he/she arrived. I later listened to the telephone call and determined that the voice on the call

was consistent with what I know as JACKSON's voice. Consequently I believe that JACKSON was the person who spoke with CS#1 regarding the heroin/fentanyl transaction. Investigators searched CS#1 for contraband and unauthorized funds with negative results. Investigators provided CS#1 with a covert audio/video recording device which allowed investigators to remotely monitor the transaction and produce a video/audio recording of the transaction and forty dollars ($40) in official funds. Investigators drove CS#1 to the area of Dale Road. Upon arrival at Dale Road, CS#1 placed a recorded and monitored telephone call to JACKSON on telephone number 513-290-1555. During the call, JACKSON instructed CS #1 to walk down Newfield Avenue. Moments after the second telephone call took place, at approximately 3:03 p.m., telephone number 513-290-1555 was located in the area of Newfield Avenue. Investigators observed the Atlas travel south on Newfield Avenue towards Dale Road and meet with CS#1. CS#1 exchanged $40 in official funds for approximately .55 grams total package weight of suspected heroin/fentanyl. Following the controlled purchase, CS#1 identified JACKSON as the individual in the Atlas who had distributed the suspected heroin/fentanyl. The purchased substance will be submitted to the Hamilton County Coroner's Lab for analysis.

18.     Investigators maintained surveillance on the Atlas. At approximately 3:22 p.m., telephone number 513-290-1555 was located in the area of Victory Parkway near the intersection of Ledgewood Drive. Investigators noted that the Atlas was also located in that area. Consequently, I believe that JACKSON possessed telephone number 513-290-1555 in the Atlas.

19.     On June 23, 2020, investigators observed the Atlas in the driveway of 1456 Rambler Place.

20.     On June 26, 2020, at approximately 11:23 a.m., officers directed CS#2 to place a recorded and monitored telephone call to JACKSON using telephone number 513-290-1555 to order 1/2 gram (.5) of heroin/fentanyl. During the call, JACKSON directed CS#2 to travel to Joseph Street

and call back once he/she arrived. I later listened to the telephone call and determined that the voice on the call was consistent with what I know to be JACKSON's voice. Consequently I believe that JACKSON was the person who spoke with CS#2 regarding the heroin/fentanyl transaction. Investigators searched CS#2 for contraband and unauthorized funds with negative results. Investigators provided CS#2 with a covert audio/video recording device which allowed investigators to remotely monitor the transaction and produce a video/audio recording of the transaction and forty dollars ($40) in official funds. The UC drove CS#2 to the area of Joseph Street. At approximately 11:44 a.m., CS#2 and the UC arrived at the meet location and CS#2 placed a second recorded and monitored telephone call to JACKSON on telephone number 513-290-1555. During the call, JACKSON instructed CS#2 to go to the dead end of Joseph Street and turn around and park. At approximately 11:45 a.m., telephone number 513-290-1555 was located within approximately 1,378 meters of the area of 4527 Reading Road, Cincinnati, Ohio. Contemporaneously, officers/agents observed the Atlas depart from the area of 1333 Carolina Avenue and travel toward Joseph Street. 4527 Reading Road is located approximately 889 meters from 1333 Carolina Avenue. Consequently I believe that JACKSON possessed telephone number 513-290-1555. At approximately 11:47 a.m. the Atlas pulled up to the driver side door of the vehicle used by the undercover officer and CS#2. JACKSON reached out and handed the UC approximately .56 grams of suspected heroin/fentanyl and the UC handed JACKSON forty dollars ($40.00) in official funds. The purchased substance will be submitted to the Hamilton County Coroner's Lab for analysis.

21.     At approximately 1:03 p.m. telephone number 513-290-1555 was located within approximately 32 meters of the area of Exclusive Sound located at 5001 Reading Road, Cincinnati, Ohio. Officers established surveillance at this location and observed the Atlas in the parking lot of

Exclusive Sound. Consequently, I believe that JACKSON still possessed telephone number 513-290-1555.

22.     On July 2, 2020, investigators observed Zaffiah Jackson and children walk out of the front door of 1456 Rambler Place. According to the Ohio Bureau of Motor Vehicles, the address on Zaffiah Jackson's license is 1456 Rambler Place.

23.     According to location information, telephone number 513-290-1555 has been frequently located in the area of 1456 Rambler Place, 1333 Carolina Avenue, and 5443 Newfield Avenue on various days at various times. In particular, telephone number 513-290-1555 was most recently located: in the area of 1456 Rambler Place as recently as July 6, 2020; in the area of 1333 Carolina Avenue as recently as July 5, 2020; and in the area of 5443 Newfield Avenue as recently as July 4, 2020.

24.     Based on my training, experience, discussions with other investigators, my knowledge that investigators seized drug proceeds and controlled substances belonging to JACKSON during a search warrant that was previously conducted at 1333 Carolina Avenue, my knowledge that telephone number 513-290-1555 is used to distribute heroin/fentanyl, my belief that JACKSON is the person who answers telephone number 513-290-1555, my knowledge that telephone number 513-290-1555 has frequently been located in the area of 1333 Carolina Avenue, my belief that on June 4, 2020 JACKSON left 1333 Carolina Avenue with telephone number 513-290-1555, my belief that JACKSON coordinated a heroin/fentanyl transaction on June 9, 2020 using telephone number 513-290-1555 while at 1333 Carolina Avenue, and my knowledge that on June 26, 2020, JACKSON, operating the Atlas, travelled directly from the area of 1333 Carolina Avenue and met with CS#2 and the UC to distribute suspected heroin/fentanyl at the end of Joseph Street, a location in close proximity to 1333 Carolina Avenue, I believe it reasonably likely to conclude that drug

**Affidavit of Special Agent Tyler Field**                                    **Page 11**

proceeds, controlled substances, cellular devices, and other fruits and instrumentalities of JACKSON's heroin/fentanyl activities are to be found at 1333 Carolina Avenue.

25.     Based on my training, experience, discussions with other investigators, my knowledge that investigators seized drug proceeds and weapons belonging to JACKSON during a search warrant that was previously conducted at JACKSON's and Zaffiah Jackson's residence located at 1365 Spring Park Walk, my knowledge that Zaffiah Jackson's current residence is 1456 Rambler Place, my knowledge that telephone number 513-290-1555 is used to distribute heroin/fentanyl, my belief that JACKSON is the person who answers and carries telephone number 513-290-1555, my knowledge that telephone number 513-290-1555 has frequently been located in the area of 1456 Rambler Place, my knowledge that the Atlas was located at 1456 Rambler Place on June 23, 2020, my knowledge that JACKSON used the Atlas to distribute suspected heroin/fentanyl on June 26, 2020, and my knowledge that drug traffickers often store drug proceeds, controlled substances, cellular devices, and other fruits and instrumentalities of their drug trafficking activities at their residences for secure and quick access, I believe it reasonably likely to conclude that drug proceeds, controlled substances, cellular devices, weapons and other fruits and instrumentalities of JACKSON's heroin/fentanyl activities are to be found at 1456 Rambler Place.

26.     Based on my training, experience, discussions with other investigators, my knowledge that investigators seized a large amount of heroin/fentanyl and weapons belonging to JACKSON during a search warrant that was previously conducted at JACKSON's stash location located at 515 Lowell Avenue, my knowledge that on June 9, 2020, at the direction of who I believe to be JACKSON, CS#1 met with the driver of a rental vehicle rented by Reid in order to obtain suspected heroin/fentanyl on Portman Avenue, my knowledge that the address on Reid's license is 5443 Newfield Avenue, my knowledge that Portman Avenue is in close proximity to 5443 Newfield

Avenue, my knowledge that on June 15, 2020, at the direction of who I believe to be JACKSON, CS#2 met on Carrahen Avenue near Newfield Avenue in order to obtain heroin/fentanyl, my knowledge that an unidentified male departed 5443 Newfield Avenue and met with the UC and CS#2 to distribute the suspected heroin/fentanyl, my knowledge that on June 18, 2020 investigators observed the Atlas parked in the area of 5443 Newfield Avenue, my knowledge that the person who I believe to be JACKSON subsequently directed CS#1 to meet on Newfield Avenue in order to obtain heroin/fentanyl, CS#1's statement that JACKSON was driving the Atlas and distributed suspected heroin/fentanyl to CS#1, my knowledge that telephone number 513-290-1555 is used to distribute heroin/fentanyl, my belief that JACKSON is the person who answers and carries telephone number 513-290-1555, and my knowledge that telephone number 513-290-1555 has frequently been located in the area of 5443 Newfield Avenue, I believe it reasonably likely to conclude that drug proceeds, controlled substances, cellular devices, weapons and other fruits and instrumentalities of JACKSON's heroin/fentanyl activities are to be found at 5443 Newfield Avenue.

**ITEMS COMMON TO SEARCH/SEIZE**

27.    Based upon my training and experience, the training and experience of other law enforcement investigators  and the facts contained herein, I know materials searched for and recovered in locations involved in drug investigations have included various controlled substances, including, but not limited to: heroin/fentanyl; drug paraphernalia such as scales, papers and drug packaging materials; books and records reflecting sales, the transfer or transportation of drugs and amounts of monies owed for drugs; records reflecting the names, addresses, and telephone numbers of co-conspirators; sales receipts and other records reflecting the expenditure of monies that are the proceeds from unlawful drug distribution; currency and money wrappers; records of

transactions to conceal and launder drug trafficking proceeds; and various valuable assets purchased with the proceeds of unlawful drug trafficking. These items, obtained by search warrants, constituted evidence of Federal drug violations.

28.     Based upon my training and experience, my participation in this investigation, and other drug trafficking investigations, I have reason to believe that:

      a.     drug traffickers often place assets in names other than their own to avoid detection of these assets by government and law enforcement agencies;

      b.     drug traffickers often place assets in names of business/corporate entities as nominee title holders in order to avoid detection of these assets by government and law enforcement agencies; even though these assets are placed in the names of other persons or entities, the drug traffickers continue to use these assets and exercise dominion and control over them;

      c.     drug traffickers must maintain and/or have quick access to large amounts of United States currency or other liquid assets in order to maintain and finance their ongoing drug business;

      d.     drug traffickers often maintain money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry drug proceeds and/or controlled substances;

      e.     drug traffickers often maintain in their residences and/or business establishments records relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed including some or all of the following written books, records, receipts, diaries, notes, ledgers, airline tickets, cashier's checks, money orders and other papers (i.e. bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs);

f.      drug traffickers commonly use cellular phones to communicate with other members of the DTO, narcotics source of supply(s), and/or narcotics customers in furtherance of violations of the Uniform Controlled Substances Act;

g.      drug traffickers commonly provide illegal narcotics to their organization on consignment sale to their customers, who subsequently pay for the drugs after reselling said drugs. Therefore, the above-mentioned books, records, receipts, notes, ledgers, etc., will be secured by the drug traffickers within their residences and/or their businesses for their ready access for the purpose of determining drug debts and collecting monies derived from the sale of drugs;

h.      drug traffickers commonly conceal contraband, proceeds of drug transactions, records of these transactions, and records reflecting names, nicknames, addresses and telephone numbers of drug associates within their residence and/or place of business, their business vehicles, or the curtilage of their residence or business for ready access and to hide them from law enforcement agencies;

i.      drug traffickers commonly will attempt to legitimize the profits from illegal drug transactions by using domestic banks and their attendant services (i.e., safe deposit boxes, securities, cashier's checks, money drafts, letters of credit, brokerage houses, real estate, shell corporations and business fronts), and evidence of this includes documents like stock certificates, bonds, deposit certificates, and travelers checks;

j.      drug traffickers often have photographs or video movies of themselves, their co-conspirators and the property and assets purchased with drug proceeds. These photographs and video movies are normally in the drug traffickers possession, their residence and/or their place of business;

k.      drug traffickers' methods of transporting drugs include but are not limited to: commercial airlines, private motor vehicles, and government and contract mail carriers. I know that the vehicles, residences, or business locations of drug traffickers will often contain records of drug-related travel. These records may include airline ticket receipts, credit card receipts, traveler vouchers, hotel and

restaurant receipts, photographs, canceled checks, maps, and written directions to locations rental car receipts and luggage tags reflecting points of travel;

l.       drug traffickers commonly have firearms in their possession (on their person, at their residence, and/or their business) including but not limited to handguns, rifles, shotguns and automatic weapons.  These firearms are most often used and/or maintained in order to protect and secure a drug trafficker's property or manufacturing operation;

m.       it is common for drug traffickers to secrete in their vehicles items identified in the above paragraphs;

n.       drug traffickers will often accumulate and maintain substantial amounts of drug proceeds, specifically currency, over a period of years, so that the proceeds can be used in later years for personal asset acquisitions and/or expenditures during periods when a drug trafficker is not distributing drugs;

o.       drug traffickers commonly will maintain residence(s) separate from their primary residence to serve as "safe houses" where the traffickers may stay for periods of time; I know that these residences which may be occupied by other conspirators or associates may contain elements of the traffickers drug crimes to include all items noted above;

p.       drug traffickers commonly have evidence of purchases of goods used in the manufacture of controlled substances secreted in their residences, businesses, or vehicles; and

q.       drug traffickers commonly secret in their residences and/or places of business, over a period of years, items such as those identified in the above paragraphs.

## CONCLUSION

29.    I believe the facts contained within this affidavit support probable cause to believe that JACKSON and others are involved in distributing controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Based on my training, experience, discussions with other law enforcement investigators, and the information contained herein, I believe that

probable causes exists that the items listed in **Attachment B** as evidence, contraband, fruits and instrumentalities of crime, persons to be arrested, property used or intended to be used in the commission of crime(s), related to evidence of a conspiracy to possess with intent to distribute, and distribute heroin/fentanyl, will be found at the locations identified in **Attachment A**.

30.     Assistant United States Attorney Karl Kadon has reviewed this affidavit and the associated application and warrants and as in his opinion they are legally and factually sufficient, I respectfully ask the Court to authorize the requested search warrants.

Respectfully submitted,

_____

Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this   7th   day of July 2020. **via electronic means.**

_____

HONORABLE STEPHANIE K. BOWMAN
UNITED STATES MAGISTRATE JUDGE



Attachment A

# **1456 Rambler Place, Cincinnati, Ohio 45231**

1456 Rambler Place, Cincinnati, Ohio is described as a single-family, two-story residence.  It has white siding and the front entry door faces south-east.  The words "fourteen fifty six" appear above the garage.

Any and all vehicles located within outbuildings, garages, and/or the curtilage.



# <u>ATTACHMENT B</u>

a. Drug or money ledgers, drug distribution or customer lists, drug supplier lists, correspondence, notations, logs, receipts, journals, books, records, and other documents noting the price, quantity and/or times when drugs were obtained, transferred, sold, distributed, and/or concealed;

b. Bank account records, wire transfer records, bank statements, safe deposit box keys and records, money wrappers, rubber bands, money containers, financial records and notes showing payment, receipt, concealment, transfer, or movement of money generated from the illegal sale of drugs;

c. Cellular telephones, digital telephones, car telephones, or other communications devices which evidence participation in a conspiracy to distribute controlled substances.

d. Personal telephone and address books and listings, letters, cables, telegrams, telephone bills, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

e. Any computer equipment, digital device, magnetic, electronic, or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-Rs, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, personal digital assistants, and any other digital device capable of accessing the internet and capable of being used to commit or further the crimes outline above, or to create, access, or store evidence, contraband, fruits, or instrumentalities of such crimes.

f. Financial instruments purchased with currency derived from the sale of controlled substances, including travelers' checks, bonds, stock certificates, cashier's checks, and certificates of deposit;

g. Money counting machines, money wrappers and rubber bands, boxes, bags, brief cases, suitcases, or containers used to carry controlled substances;

h. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds of the sales of controlled substances;

i. Records, items and documents reflecting travel for the purpose of participating in drug trafficking, including airline tickets, credit card receipts, traveler vouchers, hotel and restaurant receipts, photographs, canceled checks, maps, and written directions to locations;

j. Handguns, shotguns and other firearms, and ammunition, which may be used to facilitate the distribution or possession with intent to distribute controlled substances;

k.  Indicia of ownership and use of the vehicles, including utility bills, telephone bills, loan payment receipts, rent receipts, trust deeds, lease or rental agreements, escrow documents, keys and bank account records, registration, title, insurance, and traffic tickets;

l.  Photographs or video movies of drug traffickers, their co-conspirators and the property and assets purchased with drug proceeds;

m.  Controlled substances, including, but not limited to heroin/fentanyl;

n.  Drug paraphernalia, which can be used to store, package, weigh, dilute, and ingest controlled substances; equipment pertaining to heroin/fentanyl, and any other supplies related to the manufacture and distribution of said controlled substances;

o.  United States currency, precious metals, jewelry, financial instruments and stocks and bonds; and

p.  Any locked or closed containers, to include safes or lockboxes, believed to contain any of the above listed evidence.